UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

STACEY SMITH,

*Plaintiff-Appellant,*

and

FRANK HOLLIDAY,

*Plaintiff,*

v.

DIANA M. BORELLO,

*Defendant-Appellee.*

No. 01-1160

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-00-1167-H)

Submitted: September 23, 2002

Decided: November 1, 2002

Before MICHAEL and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Vacated and remanded by unpublished per curiam opinion.

---

## COUNSEL

Dwayne A. Brown, Baltimore, Maryland, for Appellant. Alan R. Siciliano, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, L.L.P., Lanham, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

In January 2000, plaintiff Stacy Smith and defendant Diane M. Borello were involved in a motor vehicle accident in Baltimore City, Maryland. Smith, who was approximately 19 weeks pregnant at the time, sustained personal injuries and asserted that the accident caused the premature delivery and death of her nonviable fetus a day or so after the accident. In April 2000, Smith instituted this diversity action under Maryland law against Borello, seeking damages for "serious bodily injuries and the loss of her unborn child," J.A. 2, as a result of Borello's negligence, as well as "pecuniary loss, mental anguish, severe emotional stress, emotional pain and suffering, physical injuries and the loss of her unborn child," J.A. 3.

During pre-trial motions, the district court ruled that Smith could not state a claim under the Maryland Wrongful Death Statute for her unborn child, *see* Md. Code Ann., Cts. & Jud. Proc. § 3-904 (Michie Supp. 2001), because the fetus was stillborn and nonviable at the time of its death, *see Kandel v. White*, 663 A.2d 1264, 1265 (Md. 1995). The court also ruled that, although Smith could recover damages for her emotional pain and suffering resulting from her own physical injuries, Smith could not recover damages for any emotional pain and suffering resulting from the loss of her nonviable fetus. A number of evidentiary issues arose from this distinction during the trial. The district court ruled that Smith could not testify as to her emotional state or the depression she suffered as a result of her grief over the loss of her fetus and prohibited Smith from offering testimony about her plans for the future, including purchases she had made for the expected child. Smith was also prohibited from seeking damages for the days she was unable to work due to depression caused by the loss of the fetus.

At the conclusion of the trial, the jury was instructed that, in awarding damages to Smith, they could consider Smith's personal injuries,

including their extent and duration, "[t]he effect which such personal injuries ha[d] on the overall physical and mental health and well-being of" Smith, the "[p]hysical pain and mental anguish suffered by [Smith] in the past because of her personal injuries, and which with reasonable probability may be expected to be experienced in the future," Smith's "medical and other expenses reasonably and necessarily incurred in the past," and Smith's "loss of earnings in the past." J.A. 65-66. However, the jury was instructed that:

> [t]he law does not permit Plaintiff Stacey Smith to recover for the wrongful death of her fetus. Under Maryland law, no cause of action may be asserted by a mother for wrongful death on behalf of a nonviable fetus which was not born alive. This is a policy decision made by the Maryland courts that the law will not give a nonviable fetus a cause of action for negligence before the fetus becomes a person. The fetus in this case was nonviable and stillborn. *Plaintiff Smith, therefore, is not entitled to any recovery in this case for emotional pain[,] for emotional distress or for grief suffered by her as a result of the loss of her stillborn fetus.*

J.A. 66 (emphasis added).

The jury ultimately returned a verdict in favor of Smith and awarded damages of $1,839.00 for medical expenses, $2,443.84 for loss of past earnings, and $10,000.00 for noneconomic damages. Smith appealed. Although acknowledging that she could not recover damages for the wrongful death of her nonviable fetus, *see Kandel*, 663 A.2d at 1265, Smith asserted on appeal that she could recover, as personal injuries to herself, the injuries to her fetus (as a part of her body), as well as for the emotional distress, depression, and other mental injuries resulting from her miscarriage and from the loss of her child.

Because the parameters of a woman's right to recover emotional distress damages resulting from the miscarriage and loss of a nonviable fetus were not defined under Maryland law, we certified the following question to the Maryland Court of Appeals:

> Whether, and to what extent, the injured mother of a previable fetus, miscarried as a result of a defendant's negli-

gence, can recover as damages for medical expenses, lost wages, pain and suffering, emotional distress, emotional trauma, anguish, depression and/or grief resulting from the loss of her fetus?

The Court of Appeals of Maryland accepted the certified question and has now answered it as follows:

> A pregnant woman who sustains personal injury as the result of a defendant's tortious conduct and who, as part of that injury, suffers the loss of the fetus may recover, in her own action for personal injuries, for any demonstrable emotional distress that accompanies and is attributable to the loss of the fetus. The distress recoverable in that action includes that arising from the unexpected termination of her pregnancy and the enduring of a miscarriage or stillbirth. Where a sufficient factual premise is shown, it may include compensation for (1) the depression, anguish, and grief that arises from the termination of the pregnancy, the manner in which the pregnancy was terminated, and from the miscarriage or stillbirth — the distress of not having been able to carry through to a successful completion of the pregnancy, of having to carry a fetus or a child which is destroyed by someone else's tortious conduct, of having to witness at the time of miscarriage or delivery the stillborn child or the fetal tissue that was to be her child — and (2) medical expenses reasonably incurred in the treatment of, and lost wages attendant to, that depression, anguish, or grief. It does *not* include, however, in the context of this case, pecuniary losses or solatium or loss of consortium damages recoverable under the wrongful death statute, whether or not that statute applies in the circumstance. The recovery, in other words, is for the psychic injury inflicted on the mother and not for her sorrow over the loss of the child. Recovery for that sorrow must be had, if at all, under the wrongful death statute.

*Smith v. Borello*, 804 A.2d 1151, 1163 (Md. 2002).

In light of this answer, it is now clear that the district court's rulings improperly precluded Smith from seeking damages for emotional

distress that may have resulted from the loss of her fetus. Under the standards defined by the Court of Appeals of Maryland, Smith is entitled to an opportunity to prove that she suffered the loss of her nonviable fetus as a result of Borello's negligence and to recover any emotional damages attributable to that loss as defined by the Maryland Court of Appeals.

Accordingly, we vacate the damages award and remand this case to the district court for a new trial on the issue of damages.

*VACATED AND REMANDED*